United States Court of Appeals,

Eleventh Circuit.

No. 95-6584.

ALABAMA DISABILITIES ADVOCACY PROGRAM, the Statewide Protection and Advocacy System Organized in Accordance with Public Laws 100-146 and 99-139, on behalf of Persons Labeled Developmentally Disabled or Mentally Ill, Plaintiff-Appellee,

v.

J.S. TARWATER DEVELOPMENTAL CENTER, an Alabama Institution for People with Mental Retardation, Organized and Operated Under the Alabama Department of Mental Health and Mental Retardation; Levi Harris, Director of J.S. Tarwater Developmental Center; Custodian of Records of J.S. Tarwater Developmental Center; Alabama Department of Mental Health and Mental Retardation, an Alabama Governmental Agency; Virginia Rogers, Commissioner of the Alabama Department of Mental Health and Mental Retardation; Billy Ray Stokes, Associate Commissioner for Mental Health, Retardation, Alabama Department of Mental Health and Retardation; Custodian of Records of the Alabama Department of Mental Health and Mental Retardation, Defendants-Appellants.

Oct. 10, 1996.

Appeal from the United States District Court for the Middle District of Alabama. (No. CV-95-D-383-N), Myron N. Thompson, Chief Judge.

Before EDMONDSON and DUBINA, Circuit Judges, and FARRIS[*], Senior Circuit Judge.

DUBINA, Circuit Judge:

The Defendants-Appellants J.S. Tarwater Developmental Center ("Tarwater"), et al. (collectively, "the Defendants") appeal the district court's judgment in favor of the Plaintiff-Appellee Alabama Disabilities Advocacy Program ("the Advocacy Program"), which enjoined and restrained the Defendants from failing to release to the Advocacy Program the medical records of two former Tarwater residents. Our review of the record, the district court's

---

[*]Honorable Jerome Farris, Senior U.S. Circuit Judge for the Ninth Circuit, sitting by designation.

memorandum opinion, and the controlling statutory law persuade us that the injunction was appropriately entered. Accordingly, we affirm.

## I. BACKGROUND

*A. The Developmental Disabilities Assistance and Bill of Rights Act.*

Disturbed by the inhumane and despicable conditions discovered at New York's Willowbrook State School for persons with developmental disabilities, Congress enacted the Developmental Disabilities Assistance and Bill of Rights Act ("the Act") to protect the human and civil rights of this vulnerable population. 42 U.S.C. §§ 6000 *et seq.* Pursuant to the Act, a state cannot receive federal funds for services to persons with developmental disabilities unless it has established a protection and advocacy ("P & A") system. 42 U.S.C. § 6042(a)(1).

Indeed, the Act does not merely require that the state have an advocacy system, but specifically declares: "In order for a State to receive an allotment under Subchapter II of this chapter—(1) the State must have in effect a system to protect and advocate the rights of persons with developmental disabilities." 42 U.S.C. § 6042(a). Thus, P & As are empowered, among other things, to: (1) investigate incidents of abuse and neglect of persons with developmental disabilities; (2) pursue legal, administrative, and other appropriate remedies on behalf of such persons to ensure the enforcement of their constitutional and statutory rights; and (3) provide information and referrals relating to programs and services addressing the needs of these persons. 42 U.S.C. § 6042(a)(2)(A) and (B). The Advocacy Program is the federally mandated and funded

P & A system Alabama has established pursuant to 42 U.S.C. § 6042(a)(1). Defendant Tarwater is an intermediate care facility for habitation of mentally retarded persons.

*B. The Advocacy Program's Investigation of the Deaths of G.A. and M.V.*

On February 24, 1995, the Advocacy Program received an anonymous telephone message on its answering machine questioning the circumstances of the deaths of two Tarwater residents known as G.A. and M.V. The transcript of the telephone call reads as follows:

> Ugh yes I'm calling in regard to the Wyatt vs. Hanan Lawsuit. Let me put a bug in your ear[,] this is for the lawyers representing Wyatt. We had two deaths at Tarwater; one of them was a gentleman named G[.]A[.] He was exposed to the cold and died two days later of pneumonia. He was forced to go down to programming. He was not dressed for it plus he was very, very sick at the time he went. Now there is a video tape that exists of his being sick but ugh it is my understanding the ugh administration at Tarwater has confiscated the video. If you people act very quickly you might actually get some action taken because ugh there ugh whatchacallit the administration at Tarwater are being very very careful. There [sic] covering this thing up big time. You want to act now. I suggest you check up on G[.]A[.] death and ugh the fact that he was exposed to the cold weather, he was taken to the hospital on Thursday with hyperthermic conditions and died two days later. Also a week, not less than a week later M[.]V[.] died. You need to check that one out. That was also one of these strange situations. Anyway Good luck.

The Advocacy Program verified the existence of G.A. and M.V. and their residence at Tarwater. The Advocacy Program learned that G.A. was a 36-year-old male who died from respiratory failure on February 12, 1995, while residing at Tarwater. It also learned that M.V. was a 35-year-old woman who died from acute cardio respiratory failure on February 16, 1995, while residing at Tarwater.

The Advocacy Program requested that Alabama state officials release to it the records of G.A. and M.V. When that request was refused, the Advocacy Program filed a complaint pursuant to the Act to have the district court order the following Defendants to release the records: (1) Tarwater, its director, and its custodian of records; and (2) the Alabama Department of Mental Health and Mental Retardation, its commissioners, its associate commissioner, and its custodian of records.

After the Advocacy Program filed its complaint, the Department of Mental Health and Mental Retardation gave the Advocacy Program the telephone numbers of the former guardians of G.A. and M.V. When the Advocacy Program called the families to report the anonymous phone call, the families objected to the Advocacy Program's investigation. On July 6, 1995, the district court enjoined the Defendants from failing to release the requested records to the Advocacy Program. The Defendants then perfected this appeal and moved for a stay of judgment. The district court denied the stay on August 7, 1995.

## II. ISSUES

A. Whether this appeal was rendered moot because the Defendants have already complied with the order of the district court and have granted the Advocacy Program access to the records of G.A. and M.V.

B. Whether the grant of an injunction was proper. This issue requires us to resolve two subissues:

1. Whether a parent of an individual with developmental disabilities, who has also been appointed guardian of such person, ceases to be the legal representative of such person within the meaning of 42 U.S.C. § 6042(a)(2)(I) after such individual's death.

2. Whether an anonymous telephone call implying that abuse and/or neglect may have caused death both constitutes a complaint

within the meaning of 42 U.S.C. § 6042(a)(2)(I)(ii)(III) and establishes probable cause, either of which justifies the P & A's access to the records of G.A. and M.V.

## III. STANDARDS OF REVIEW

The reviewing court determines questions of mootness under a plenary standard of review. *United States v. Florida Azalea Specialists,* 19 F.3d 620, 621 (11th Cir.1994).

This court reviews the grant of an injunction for abuse of discretion; however, if the trial court misapplies the law this court will correct the error without deference to that court's determination. *See Wesch v. Folsom,* 6 F.3d 1465, 1469 (11th Cir.1993), *cert. denied,* 510 U.S. 1046, 114 S.Ct. 696, 126 L.Ed.2d 663 (1994).

## IV. DISCUSSION

*A. Mootness.*

During oral arguments in this case, this court *sua sponte* requested that the parties file supplemental briefs responding to a suggestion of mootness. Specifically, the court inquired of counsel whether this appeal was rendered moot due to the fact that the Defendants had already complied with the district court's order to grant the Advocacy Program access to the records of G.A. and M.V.

Much like the situation we faced in *United States v. Florida Azalea Specialists,* 19 F.3d 620 (11th Cir.1994), the question of mootness in the present case is controlled by the Supreme Court's decision in *Church of Scientology of California v. United States,* 506 U.S. 9, 11-12, 113 S.Ct. 447, 449, 121 L.Ed.2d 313 (1992). In *Church of Scientology,* the district court ordered a state-court

clerk to comply with a summons issued by the Internal Revenue Service ("IRS"). The Church filed a timely notice of appeal, but its request for a stay of the summons enforcement order failed, and copies of the tapes were given to the IRS while the appeal was pending. The Ninth Circuit dismissed the appeal as moot, finding that no controversy existed because the IRS had already obtained the tapes. *United States v. Zolin,* No. CV 85-0440-HLH (CA9, Sept. 10, 1991). The Supreme Court, however, vacated and remanded, holding that the compliance with the enforcement order did not moot the Church's appeal. In so holding, the Court reasoned that although it could not return the parties to the "status quo ante," the court could nevertheless effectuate a partial remedy by ordering the government to destroy or return any and all copies of the tapes still in its possession. *Church of Scientology,* 506 U.S. at 12-13; 113 S.Ct. at 449-50.

Likewise, if we should hold that the anonymous phone call is not a "complaint" or does not constitute probable cause as required by 42 U.S.C. § 6042(a)(2)(I)(ii)(III), or that the natural parent of a deceased person with developmental disabilities is a legal representative as contemplated by Congress in 42 U.S.C. § 6042(a)(2)(I)(ii)(II), then the parents of G.A. and M.V. would be entitled to have their childrens' confidential medical records either returned or destroyed. Similarly, the Department of Mental Health and Mental Retardation would be entitled to have its records either returned or destroyed. Even though this court cannot return the parties to the "status quo ante," it can effectuate a partial

remedy. Therefore, this appeal is not moot.[1]

*B. The Injunction.*

Resolving the issue of whether the injunction regarding the Advocacy Program's access to records was proper involves the interpretation of 42 U.S.C. § 6042(a)(2)(I). Pursuant to that statute, three requirements must be met for the Advocacy Program to gain access to records: (1) the individual must be unable to authorize access due to a mental or physical condition; (2) the individual must not have a legal representative, including a legal guardian (except the state); and (3) the system must either have received a complaint relating to the individual or have probable cause to believe there has been abuse or neglect. 42 U.S.C. § 6042(a)(2)(I). On appeal here, the Defendants contend that the Advocacy Program did not meet the second and third requirements of the statute.[2] *See* Defendants' Br. at 1; *id.* at 27 ("The problem in this case is that the statute in question does not define

---

[1]Alternatively, even if the appeal would otherwise be moot, this case is an appropriate one to decide on the merits because the challenged action is capable of repetition, yet evading review. *See Southern Pacific Terminal Co. v. ICC,* 219 U.S. 498, 515, 31 S.Ct. 279, 283, 55 L.Ed. 310 (1911). Specifically, there is a reasonable expectation that Tarwater and the Advocacy Program will, in the future, find themselves in the same dispute over an individual's records. Moreover, this dispute will evade review because of the need to access records quickly in order to investigate effectively. *See Honig v. Doe,* 484 U.S. 305, 317-23, 108 S.Ct. 592, 601-04, 98 L.Ed.2d 686 (1988).

[2]While not listed as an issue on appeal, we note that § 6042(a)(2)(I)'s first requirement has been met. Death clearly is a physical condition that renders both G.A. and M.V. unable to authorize record access. *See* 42 U.S.C. § 6042(a)(2)(I)(ii)(I); *see also Alabama Disabilities Advocacy Program v. J.S. Tarwater Developmental Center,* 894 F.Supp. 424, 428 (M.D.Ala.1995). There is no evidence that the Act does not apply to deceased persons, and it would be utterly absurd to read into the Act an exception for the most serious abuses, i.e., those that result in death.

"complaint' or "legal representative.' ").

It is clear that the Act provides express authority for P & As to gain broad access to records, facilities, and residents to ensure that the Act's mandates can be effectively pursued. *See* 42 U.S.C. § 6042(a)(2)(H) and (I); *see also Mississippi Protection & Advocacy System, Inc. v. Cotten,* 929 F.2d 1054, 1058-59 (5th Cir.1991) ("The state cannot satisfy the requirements of [the Act] by establishing a protection and advocacy system which has this authority in theory, but then taking action which prevents the system from exercising that authority."). In adopting the provision of the Act mandating P & A access to facility residents, 42 U.S.C. § 6042(a)(2)(H)), Congress gave substance to its intent to "assure that the most vulnerable individuals [institutionalized persons] who may not be able to contact the P & A system will have access to protection and advocacy services." S.Rep. 120, 103rd Cong., 1st Sess. 36, *reprinted in* 1994 U.S.Code Cong. & Admin.News 164, 199. In reauthorizing the Act in 1984, Congress stated its intention that "all developmentally disabled persons who reside in facilities for developmentally disabled persons [ ] be eligible for services from the protection and advocacy system." H.Conf.Rep. 1074, 98th Cong., 2d Sess. 34 (1984), *reprinted in* 1984 U.S.Code Cong. & Admin.News 4334, 4376-77. It is within this broad remedial framework that we analyze whether the injunction was proper.

1. G.A. and M.V. Do Not Have Legal Representatives.

The Defendants argue that the families' unwillingness to release the records should be controlling. Pursuant to § 6042, this contention is incorrect if G.A. and M.V. do not have a legal

representative, including a legal guardian. 42 U.S.C. § 6042(a)(2)(I). Guardianship is governed by Alabama state law, which clearly states: "The authority and responsibility of a guardian of an incapacitated person terminates upon the death of the guardian or ward." Ala.Code § 26-2A-109 (1992). Moreover, although Alabama law contains certain preferences for people who may be appointed to administer a decedent's estate, these preferences do not automatically confer any legal status on a former guardian. Ala.Code §§ 43-2-42, 43-2-833 (1991 & Supp.1994). The personal representative must be appointed by a probate judge, Ala.Code §§ 43-2-40, 43-2-831 (1991 & Supp.1994). The Defendants have introduced no evidence that either of the former guardians was appointed administratrix of her child's estate. The statutory preference in favor of a relative cannot be elevated into an automatic grant of the powers of an administrator. Thus, neither G.A. nor M.V. has a legal representative, including a legal guardian, at the present time.

The Defendants urge that this construction of 42 U.S.C. § 6042 ignores the intent of Congress to enhance the role of the family in providing care to persons with developmental disabilities. This court recognizes the statute's emphasis on family; however, the Advocacy Program's access to the records of G.A. and M.V. does not weaken the role of the family, nor does it deprive the parents of any rights they may still have after the deaths of their wards. For example, the Advocacy Program's attempt to obtain the records does not stop the parents from obtaining their children's medical records if they wish, and if they are still entitled to them.

Moreover, by federal regulation, the Advocacy Program is required to keep all record information, including information about the family, confidential. *See* 45 C.F.R. § 1386.21(b) (1994).[3]

2. An Anonymous Telephone Call Implying that Abuse and/or Neglect May Have Caused Death Both Constitutes a "Complaint" and Establishes "Probable Cause," Either of Which Justifies the P & A's Access to the Records of G.A. and M.V.

Among the situations in which the Act authorizes a P & A to have access to an individual's records are when the incidents are reported to the system *or* when there is probable cause to believe that neglect or abuse has occurred. 42 U.S.C. § 6042(a)(2)(I)(ii)(III). We conclude that the district court was correct in finding that the Advocacy Program was entitled to access to G.A. and M.V.'s records because a complaint had been received and, alternatively, because the phone call established probable cause.

a. The Anonymous Telephone Call Constitutes a Complaint.

---

[3]Since children living in institutions necessarily live away from their parents, the most involved and concerned parents cannot observe the majority of events experienced by their children in institutions. Institutionalized people with disabilities are by-and-large under the exclusive control of facility staff. Regular telephone calls or visits often will not uncover abuse or neglect. The opportunity to observe possible abuse or neglect is limited, particularly when institution staff offer plausible explanations for injuries. If their children are subject to passive neglect rather than active abuse, parents are highly unlikely to know. These long-distance family ties would operate to suggest that legal guardians have even less control over their wards, and consequently less reason for extending that control after the ward has died.

We have no reason to doubt that the families of G.A. and M.V. are concerned and caring parents who did what they believed best for their children. However, their faith in the institution does not alter the fact that abuse or neglect may have occurred. Congress legislated the Act to protect disabled people who are unable to protect themselves.

The anonymous phone caller asserted specific wrongdoing with respect to G.A. and stated that M.V.'s death "was also one of these strange situations." The Act imposes no special requirements on the source of the complaint or of the person making it, and we agree with the district court that no such requirements should be read into the statute. Anonymous complaints are not uncommon occurrences for P & As and for other investigatory agencies. *See Mississippi Protection & Advocacy System, Inc. v. Cotten,* 929 F.2d at 1056. Complainants, particularly staff and sometimes family members, may prefer to remain anonymous for fear of overt or subtle retaliation. Indeed, we find persuasive that the proposed Act regulations, in the preamble discussion, concur that informal complaints or those transmitted by telephone are sufficient:

> ADD understands that P & As undertake investigations of incidents of abuse and neglect based on media reports, general investigations, inspection reports, and other credible information regarding abuse and neglect. P & As also may use information gained through *telephone calls or informal complaints* by residents, staff, relatives, or friends. The proposed regulations are intended to confirm the authority of the P & As to rely on such information as grounds for investigations of abuse or neglect either because they are reports of incidents, or because they constitute probable cause.

60 F.R. at 26778 (emphasis added). Accordingly, we hold that, for purposes of the Act, the anonymous phone call in this case constitutes a complaint.

b. The Anonymous Telephone Call Established Probable Cause.

Alternatively, we also agree with the district court's finding that "the anonymous phone call provides enough evidence to support allegations of abuse and neglect and thereby establishes probable cause." 894 F.Supp. at 429. In so doing, we note that

unlike criminal law probable cause, the consequence of a P & A's determination of probable cause is not an indictment or an accusation, but rather a civil investigation. Moreover, no fundamental liberty or privacy interest is impinged when a P & A finds probable cause to investigate an incident at a facility.

In the P & A probable cause process, the interests of three parties are implicated—those of the facility, those of the individual who may have been subject to abuse and his or her family, and those of the P & A, which has an obligation and mandate to protect from abuse the individual(s) and others who are similarly situated. In this balance, the facility's interests surely are less viable and of less import than those of the individual and the P & A. The facility can claim no interest in avoiding investigations of harm or injury to a person with a disability. Minor inconveniences to staff or some disruption of the facility's routine hardly rise to the level of the liberty interest that is generally at issue in a criminal investigation. *Michigan Protection & Advocacy Service, Inc. v. Miller,* 849 F.Supp. 1202, 1208-09 (W.D.Mich.1994) (defendants' objections that the P & A access to facility for children will interfere with programming have no merit). Indeed, one would suppose that a facility's legitimate interests are served when abuse and neglect are uncovered and can be corrected. Likewise, when a P & A makes a finding of probable cause, no liberty interest of the developmentally disabled person is threatened, as it is precisely that individual's interest that the P & A seeks to protect. *See United States v. Allis-Chalmers,* 498 F.Supp. 1027, 1031

(E.D.Wis.1980) (occupational safety agency may have access to employees' health records since agency "is acting *on behalf of* the very employees" the company claims it is seeking to protect by alleging that access violated employees' privacy).

## V. CONCLUSION

For the foregoing reasons, we affirm the judgment of the district court.

AFFIRMED.