A99A0235. GEORGIA ADVOCACY OFFICE v. BORISON et al.
(520 SE2d 701)

Judge Harold R. Banke.

The Georgia Advocacy Office ("GAO") appeals an order of the superior court denying a request by GAO to inspect and to be provided with certain information concerning the records of patients of Richard Borison, M.D. and Bruce Diamond, M.D. The underlying case arose after these two physicians were indicted for criminal misconduct involving fraudulent drug studies. Following the criminal indictments, the State instituted a civil forfeiture action against the assets of Borison and Diamond.

To comply with certain federal statutes, the Governor designated GAO as this State's protection and advocacy ("P&A") system to champion the legal rights of individuals with mental illnesses and developmental and other disabilities.[1] 42 USC § 10803. See *In the Interest of A. V. B.,* 222 Ga. App. 241, 242 (474 SE2d 114) (1996). Under the Protection & Advocacy Individual Rights Act ("PAIR"), an advocacy system must protect persons with disabilities who fit neither the statutory definition of mentally ill nor developmentally disabled including individuals who are not in residential facilities. 29 USC § 794e (a).

After a series of articles published in the Atlanta newspapers detailed Borison and Diamond's bogus clinical trials and alleged incidents of abuse and neglect of study participants, GAO launched its own independent investigation. GAO sought to ascertain whether patients who participated in any of the 82 clinical drug trials conducted by Borison and Diamond had actually been subjected to abuse or neglect. GAO also wanted to inform any victims of such miscon-

---

[1] The Protection & Advocacy for Mentally Ill Individuals Act ("PAMII") codified at 42 USC § 10801 et seq. and the Protection & Advocacy of the Developmentally Disabled Act ("PADD") codified at 42 USC § 6041 et seq. require that each state which accepts federal funds for certain services must establish a protection and advocacy system.

duct about their legal rights.

After learning that the court-appointed receiver in the State's civil forfeiture action had custody and control of the medical records of all participants in the 82 drug studies, GAO contacted that receiver. Citing several federal statutes, GAO asserted that it had a legal right to be provided the full names and addresses of all individuals who participated in any of the 82 drug studies which were the subject of the February 18 indictments. GAO also asked the receiver to make the records available for its inspection.[2]

Notwithstanding the fact that federal law explicitly mandates that all protection and advocacy systems, like GAO, "maintain the confidentiality of patient records to the same extent as is required of the provider" (42 USC § 10806 (a)), the receiver denied GAO's request, claiming that "all the records of the individuals involved in those studies . . . are confidential and protected from disclosure." The receiver refused to supply any patient records or names and addresses without releases instructing him to do so.

The receiver filed a Petition for Direction in the Superior Court of Columbia County seeking:

> to obtain either the Court's protection from the requirement to produce the names and the documents listed in the letter of the Georgia Advocacy Office, or in the alternative, the Receiver would request the Court to direct and order the Receiver specifically as to what course of action he is to take.

After a hearing on this petition, the trial court issued an order directing the receiver to deny GAO's request for information and records. Relying solely on part of one federal statute, PAMII, 42 USC § 10805 (a) (4), the court concluded that GAO failed to demonstrate that it had authority to seek the names, addresses or records of the study participants of the clinical drug trials conducted by Borison and Diamond.

GAO appeals that order, contending that the trial court erred by considering only the most restrictive federal statute and not other applicable federal statutes. It asserts that it has a legal right to the information being sought. *Held*:

Under the federal statutory framework, to obtain patients' records, absent an actual client relationship, a P&A system: (1) must

---

[2] In February 1998, GAO sent ante litem notice to the State, alleging various tort and breach of contract claims on behalf of a class of 500 to 1,500 individuals. GAO asserted that the tortious conduct occurred while these persons were misused as human "guinea pigs" in "bogus drug studies" while they were residents or outpatients of Georgia Regional Hospital at Augusta or the Medical College of Georgia or its adjunct facilities.

have "probable cause" as defined by federal law, and (2) must show that the records sought belong to a person fitting within the contours of one of the pertinent federal statutes, PAMII, PADD, and PAIR, and (3) must show the existence of certain specified circumstances under those laws. See 42 USC §§ 6042 (a) (2) (I) (i); 10805 (a) (4) (A).

Under both PAMII and PADD, a P&A system has a right of access to records of individuals only in three delineated circumstances. A system may obtain the records of any individual who is a client of the system where such individual or his legal guardian or representative has authorized the system to have access. 42 USC §§ 6042 (a) (2) (I) (i); 10805 (a) (4) (A). Alternatively, a system may obtain the records of any individual who is unable to authorize the system to have such access, who does not have a legal guardian or representative or whose guardian is the State, and with respect to whom either a complaint has been received or there is probable cause to believe that such individual has been subjected to or is being subjected to abuse or neglect. 42 USC §§ 6042 (a) (2) (I) (ii); 10805 (a) (4) (B). A system may also obtain access to the records of any individual who has a legal guardian or representative and with respect to whom there is probable cause to believe that such individual has been subject to abuse or neglect, if such representative has been contacted by the system, the system has offered its assistance to resolve the situation, and the representative has failed or refused to act. 42 USC §§ 6042 (a) (2) (I) (iii); 10805 (a) (4) (C).

Congress broadly defined "probable cause" under PAMII to mean: "reasonable grounds for belief that an individual with mental illness has been, or may be at significant risk of being subject to abuse or neglect." 42 CFR § 51.2. PADD uses a similar definition of probable cause in this context. 45 CFR § 1386.19. Under the statutory framework, the designated P&A system, not a court, makes the determination as to "probable cause." See *Ala. Disabilities Advocacy Program v. J. S. Tarwater Developmental Center*, 97 F3d 492, 498-499 (11th Cir. 1996).

By federal law, where media reports, general investigations, inspection reports and other credible information regarding abuse and neglect create probable cause, P&A systems are authorized and expected to conduct investigations.[3] See 45 CFR § 1386.22 (a) (iii) (probable cause can be the result of monitoring or other activities including media reports and newspaper articles); *Tarwater*, 97 F3d at 498-499. Based on the criminal indictments against Borison and Diamond, various media accounts, the guilty plea by one defendant, and

---

[3] The Restatement of Bill of Rights for Mental Health Patients guarantees the "right not to participate in experimentation in the absence of such person's informed, voluntary, written consent. . . ." 42 USC § 10841 (1) (E).

GAO's own investigation, GAO plainly had probable cause within the meaning of these federal statutes to investigate further.[4]

Armed with a showing of "probable cause" as defined by federal law, GAO then contacted the receiver to obtain additional facts. But at that juncture, GAO's efforts became stymied. Although GAO presented probable cause suggesting that numerous persons may have been victimized, it could not identify them by name.[5] Nor could GAO initiate contact with unidentified persons.[6] Without access to the records, GAO could not specifically show which, if any, study participants who were mentally ill or developmentally disabled fit within the parameters of PAMII, PADD, or PAIR and essentially were unable to provide their consent.[7]

Congress intended to require states to have "effective" P&A systems, not pro forma ones. *Miss. Protection &c. System v. Cotten*, 929 F2d 1054, 1058 (5th Cir. 1991). The Eleventh Circuit court in *Tarwater*, supra, observed: "[A] state cannot satisfy the requirements of (the Act) by establishing a protection and advocacy system which has this authority in theory, but then taking action which prevents the system from exercising that authority." Id. at 497. As another court astutely noted, "[o]bviously, it [the P&A system] does not have to have proof of abuse or neglect at the time it seeks to undertake an investigation; if it had proof of abuse or neglect, no further investigation would be necessary." *Md. Disability Law Center v. Mt. Washington Pediatric Hosp.*, 664 A2d 16, 23 (Md. Ct. of Spec. App. 1995).

On appeal, we accept a trial court's findings of fact unless clearly erroneous but owe no deference to a trial court's conclusions of law. *Espinoza v. State*, 265 Ga. 171, 172 (1) (454 SE2d 765) (1995). Here, the trial court's order hinged in part on misconstruing the law. The

---

[4] GAO's investigative coordinator offered several hearsay accounts of incidents allegedly triggering pulmonary complications, impotence, attempted suicide, and exacerbation of major depression. The affidavit averred that some of the patient participants at Georgia Regional Hospital and at the VA Hospital lacked the capacity to realize that they had been part of drug trials.

[5] In its brief, GAO states that "[n]umerous counts of a one hundred twenty count indictment describe persons with disabilities being subjected to venapuncture by unlicensed personnel, being subjected to the unauthorized practice of medicine, or being switched to other drug studies, not out of concern for health, but for the profit of the doctors." GAO claims that "few of the people subjected to abuse have been identified by GAO."

[6] As the district court noted in *Robbins v. Budke*, 739 FSupp. 1479, 1485 (N. M. 1990), "[a] P & A [system] also has a protected First Amendment right to communicate and consult with the population it was created to serve. *United Transportation v. Michigan Bar*, 401 U. S. 576, 580-81, 91 S.Ct. 1076, 1079-80, 28 L.Ed.2d 339 (1971)."

[7] The receiver contends that GAO's inquiry is time-barred since any incidents of abuse or neglect are more than 90 days old. See 42 USC § 10805 (a) (1) (C) (ii). But that subsection applies to the pursuit of "administrative, legal, and other remedies" and not to investigations of incidents. Compare 42 USC § 10805 (a) (1) (A). Moreover, these federal statutes safeguard the rights of past victims who "may have been subjected to abuse."

court faulted GAO for failing to show that any inpatient with a mental illness was receiving treatment at a "facility" and was currently at risk of harm. But the federal statutes obligated GAO to investigate past incidents of mistreatment wherein an individual "has been at significant risk of being subject to abuse or neglect." 42 CFR § 51.2; 45 CFR § 1386.19. By concentrating its analysis only on present participants which, of course, there was none since the experimentation had ceased, the court clearly erred in applying federal law. GAO offered uncontradicted testimony that "[s]ome of the study participants that we have direct knowledge of were/are residents of various facilities including nursing homes and the VA Hospital."

We, therefore, remand this case to the superior court to exercise its statutory and equitable powers. Ga. Const. of 1983, Art. VI, Sec. I, Par. IV. *King v. Bishop*, 198 Ga. App. 622, 624 (402 SE2d 307) (1991); see *Aetna Cas. &c. Co. v. Ridgeview Institute*, 194 Ga. App. 805, 806-807 (1) (392 SE2d 286) (1990).

We direct the court to devise a plan for ensuring an expeditious and confidential review of these records in a manner the court considers appropriate, to determine which, if any, study participants fit within the federal statutory guidelines of PAMII, PADD, or PAIR and were subjected to abuse or neglect. See *Ridgeview Institute*, 194 Ga. App. at 807. In so doing, the court has the inherent power to conduct in camera reviews and to fashion orders limiting the use and dissemination of records to protect patient privacy interests. *Apple Investment Properties v. Watts*, 220 Ga. App. 226, 229 (469 SE2d 356) (1996). If GAO obtains a proper release or the consent from an individual or from a guardian where appropriate, then the court must ensure prompt compliance with such record requests after reviewing them to ensure the redaction of any privileged communications. See *Plunkett v. Ginsberg*, 217 Ga. App. 20, 22 (456 SE2d 595) (1995) (case remanded to trial court to review psychiatric records); see *Ridgeview Institute*, 194 Ga. App. at 807 (1) (trial court directed to conduct in camera inspection of records).

To hold otherwise would unnecessarily insulate potentially culpable defendants from accountability for their purported misdeeds. See *Watts*, 220 Ga. App. at 229. This we refuse to do.

*Judgment vacated and case remanded with direction. Blackburn, P. J., and Barnes, J., concur specially.*

BLACKBURN, Presiding Judge, concurring specially.

I agree with the analysis and the holding of the majority. I write separately to suggest that the trial court appoint a guardian ad litem as an additional measure to protect the rights of the patients. Although a special master could protect the confidentiality of the

patients' records, the appointment of a special master would be for the court's benefit, e.g., as the majority noted the trial court could conduct an in camera inspection of the records itself. The appointment of a guardian ad litem, however, would be for the benefit and protection of the patients' rights and interests.

I am authorized to state that Judge Barnes joins in this opinion.

DECIDED JUNE 30, 1999 — CERT. APPLIED FOR.

*Cristina C. Higgins, Robert J. Raubach*, for appellant.
*Garrett & Gilliard, Michael C. Garrett, Jay M. Sawilowsky*, for appellees.