OFFICE OF THE ATTORNEY GENERAL · STATE OF TEXAS

February 8, 2002

Ms. Karen F. Hale
Commissioner
Texas Department of Mental Health and
 Mental Retardation
P. O. Box 12668
Austin, Texas 78711-2668

Opinion No. JC-0461

Re: Whether a federally-funded state protective and advocacy system for persons with mental illness or developmental disabilities may have access to a person and his or her records over the objection of the person's guardian (RQ-0427-JC)

Dear Commissioner Hale:

The federal government provides funding to states that establish a system to protect and advocate for the rights of persons with mental illness and developmental disabilities. *See* 42 U.S.C. §§ 10801-10851 (1994 & Supp. V 1999) (the Protection and Advocacy for Mentally Ill Individuals Act, or "PAMII Act"); *id.* §§ 15041-15045 (the Developmental Disabilities Assistance and Bill of Rights Act, or "DD Act"). In exchange for federal funding, the state protection and advocacy system ("P&A system") must comply with federal law. Among the requirements of federal law is that a P&A system have access to persons with mental illness or developmental disabilities, and to their records, in order to provide information, investigate complaints, and perform other functions specified by law. The terms and conditions of such access are laid out in detail in federal statutes and regulations. You ask whether a P&A system may have access to a person with a mental illness or developmental disability, and the person's records, when the person's legal guardian objects to such access. We conclude, based on the plain language of federal statues and regulations, on the underlying purpose of the PAMII and DD Acts and regulations, and on court interpretations of the Acts, that a P&A system may have access to a person with a mental illness or developmental disability, and to the person's records, under the circumstances and according to the procedures prescribed by law, even if the legal guardian of the person objects to such access.

The PAMII Act and the DD Act were enacted by Congress in order to address what it found to be deplorable conditions in public and private facilities housing persons with mental illness and developmental disabilities. *See* 42 U.S.C. § 10801 (1994); *Ala. Disabilities Advocacy Program v. Tarwater Dev. Ctr.*, 97 F.3d 492, 494-95 (11th Cir. 1996); *Robbins v. Budke*, 739 F. Supp. 1479, 1481 (D. N.M. 1990). An essential part of the Acts was the creation of federally-funded state P&A systems, whose mission is to ensure that this vulnerable population of individuals is not abused or neglected. "The mentally ill are vulnerable to abuse and neglect because mentally ill individuals have difficulty recognizing the concept that they have rights and will not necessarily identify even the most egregious abuse as a violation of their rights." *Robbins*, 739 F. Supp. at 1486. They are

often unlikely to report abuses committed by the people who have daily control over their lives in a facility, and even the most vigilant parents or guardians may not uncover wrongdoing during their visits. *See Tarwater*, 97 F.3d at 498 n.3. Thus, "Congress legislated the Act to protect disabled people who are unable to protect themselves." *Id.* (discussing the DD Act).

In Texas, the designated state P&A system is Advocacy, Incorporated ("Advocacy, Inc.").[1] You tell us that the guardians of a number of patients with mental illness or developmental disabilities who reside in facilities operated by the Texas Department of Mental Health and Mental Retardation ("TDMHMR") have asked the department to deny Advocacy, Inc. access to the patients and their records. "The guardians contend that they have the ultimate authority to decide whether or not their ward is to be contacted by personnel from Advocacy, Inc., and whether or not the ward's records are to be reviewed."[2] Advocacy, Inc., conversely, argues that federal laws and regulations allow P&A systems to have access to patients and their records, under certain circumstances, irrespective of guardian consent. In light of these conflicting views, you ask the following three questions:

> 1. May Texas' P&A system, Advocacy, Inc., have access to individuals (both persons with mental illness and persons with mental retardation/developmental disabilities) receiving services in TDMHMR facilities when these same individuals' guardians have specifically refused to allow such access?

> 2. May Advocacy, Inc., access the records of an individual (both persons with mental illness and persons with mental retardation/developmental disabilities) under either 42 USCA § 10805(a)(4)(C)(i-iii) or 42 USCA § 15043(a)(2)(I)(iii)(I-V) when that person's guardian has specifically refused to allow access after being offered assistance by the P&A system, as described in each statute?

> 3. Does the P&A system authorize different levels of access to individuals and records (over the objections of guardians) for each of

---

[1] Under both the DD Act regulations and the PAMII Act regulations, a state P&A system is designated by the governor or state legislature. *See* 42 C.F.R. § 51.5(a) (2000); *id.* §§ 1386.19, .20. Advocacy, Inc. was designated by Governor Dolph Briscoe to serve as the state's P&A system. *See* Tex. Gov. Exec. Order No. DB-33, 2 Tex. Reg. 3713 (1977). We also note that state law authorizes the Texas Department of Protective and Regulatory Services to investigate a report of abuse, neglect, or exploitation of a child receiving services in a facility operated by or under contract with the TDMHMR. *See* TEX. FAM. CODE ANN. § 261.404 (Vernon Supp. 2002).

[2] Letter to Honorable John Cornyn, Texas Attorney General, from Ms. Karen F. Hale, Commissioner, Texas Department of Mental Health and Mental Retardation (Aug. 30, 2001) (on file with Opinion Committee) [hereinafter Request Letter].

the various functions the P&A is authorized to perform, for example, investigating alleged abuse/neglect or overseeing facilities?

Request Letter, *supra* note 2, at 2-3.

We conclude, based on the plain language of federal statutes and regulations, on the underlying purpose of the PAMII and DD Acts and regulations, and on court interpretations of the Acts, that a P&A system may have access to a person with a mental illness or developmental disability, and to the person's records, under the circumstances and according to the procedures prescribed by law, even if the legal guardian of the person objects to such access. Although Texas law grants legal guardians the right of care, control, and protection of their wards, *see* TEX. PROB. CODE ANN. § 767 (Vernon Supp. 2002), the Supremacy Clause of the United States Constitution requires inconsistent state laws to yield to valid federal laws and regulations. *See* U.S. CONST. art. VI, cl. 2; *Fidelity Fed. Sav. & Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 152 (1982); *Seiter v. Veytia*, 756 S.W.2d 303 (Tex. 1988). And while a patient's legal guardian retains an important and respected role under the federal Acts, and is entitled in some cases to notice of a request for access and to withhold consent to certain actions of a P&A system, the overriding intent of the statutes is to allow P&A systems reasonable, unrestricted access to patients and their records in order to fulfill the purposes of the Acts.

We will address your first two questions in the following two sections of this opinion. Your third question will be addressed within those two sections as it relates to each of the questions.

## Access to Individuals

In order for a state to receive federal funds under the PAMII Act, the state must have in effect a system to protect and advocate for the rights of individuals with mental illness. The statute provides that a P&A system shall "have access to facilities in the State providing care or treatment." 42 U.S.C. § 10805(a)(3) (1994). The regulations provide further details on access to patients:

> (b) A P&A system shall have *reasonable unaccompanied access to public and private facilities* and programs in the State which render care or treatment for individuals with mental illness, and to all areas of the facility which are used by residents or are accessible to residents. The P&A system shall have *reasonable unaccompanied access to residents at all times necessary to conduct a full investigation of an incident of abuse or neglect*. This authority shall include the opportunity to interview any facility service recipient, employee, or other persons, including the person thought to be the victim of such abuse, who might be reasonably believed by the system to have knowledge of the incident under investigation. *Such access shall be afforded, upon request, by the P&A system when:*

(1) An incident is reported or a *complaint* is made to the P&A system;

(2) The P&A system determines there is *probable cause* to believe that an incident has or may have occurred; or

(3) The P&A system determines that there is or may be *imminent danger* of serious abuse or neglect of an individual with mental illness.

(c) In addition to access as prescribed in paragraph (b) of this section, a P&A system shall have *reasonable unaccompanied access to facilities* including all areas which are used by residents, are accessible to residents, and to programs and their residents at reasonable times, which at a minimum shall include normal working hours and visiting hours. *Residents include adults or minors who have legal guardians or conservators.* P&A activities shall be conducted so as to minimize interference with facility programs, respect residents' privacy interests, and honor a resident's request to terminate an interview. *This access is for the purpose of:*

(1) *Providing information and training on, and referral to programs* addressing the needs of individuals with mental illness, and information and training about individual rights and the protection and advocacy services available from the P&A system, including the name, address, and telephone number of the P&A system.

(2) *Monitoring compliance* with respect to the rights and safety of residents; and

(3) *Inspecting,* viewing and photographing all areas of the facility which are used by residents or are accessible to residents.

(d) *Unaccompanied access to residents shall include the opportunity to meet and communicate privately with individuals* regularly, both formally and informally, by telephone, mail and in person. *Residents include minors or adults who have legal guardians or conservators.*

(e) *The right of access specified in paragraph (c) of this section shall apply despite the existence of any State or local laws or regulations which restrict informal access to minors and adults with legal guardians or conservators.* The system shall make [e]very

> effort to ensure that the parents of minors or guardians of individuals in the care of a facility are informed that the system will be monitoring activities at the facility and may in the course of such monitoring have access to the minor or adult with a legal guardian. The system shall take no formal action on behalf of individuals with legal guardians or conservators, or initiate a formal attorney/client or advocate/client relationship without appropriate consent, except in emergency situations as described in Sec. 51.41(b)(3).

42 C.F.R. § 51.42(b)-(e) (2000) (emphasis added). Thus, under the PAMII Act and regulations, a P&A system may have reasonable, unaccompanied access to a facility and its residents (1) to conduct investigations of abuse or neglect when a complaint has been made, when there is probable cause to believe that an incident may have occurred, or when a resident is in imminent danger of serious abuse or neglect; (2) to provide information and training; (3) to monitor compliance with rights and safety laws; and (4) to inspect, view, and photograph all areas used by or accessible to residents.

The DD Act and corresponding regulations require substantially the same right of access to developmentally disabled individuals as a condition of federal funding. *See* 42 U.S.C. § 15043(a)(1) (Supp. V 1999). A state P&A system must have the authority to investigate incidents of abuse and neglect, provide information to patients, and pursue legal, administrative, and other appropriate remedies to ensure the well-being of patients. *See id.* § 15043(a)(2)(A)-(B). Included in this authority is the power to "have access at reasonable times to any individual with a developmental disability in a location in which services, supports, and other assistance are provided to such an individual, in order to carry out the purpose of [section 15043]." *Id.* § 15043(a)(2)(H).

Regulations adopted by the United States Department of Health and Human Services set out in more detail the circumstances under which a P&A system may have access to a person with developmental disabilities:

> (f) Access to Facilities and Individuals with Developmental Disabilities—A system shall have *reasonable unaccompanied access to public and private facilities* which provide services, supports, and other assistance for individuals with developmental disabilities in the State *when necessary to conduct a full investigation of an incident of abuse or neglect* under section 142(a)(2)(B) of the Act. This authority shall include the opportunity: to interview any facility service recipient, employee, or other person, including the person thought to be the victim of such abuse, who might be reasonably believed by the system to have knowledge of the incident under investigation; and to inspect, view and photograph all areas of the facility's premises that might be reasonably believed by the system to have been connected with the incident under investigation.

(g) Under section 142(a)(2)(H) of the Act, the system and all of its authorized agents shall have *unaccompanied access to all residents* of a facility at reasonable times, which at a minimum shall include normal working hours and visiting hours, *for the purpose of*:

(1) *Providing information and training* on, and referral to, programs addressing the needs of individuals with developmental disabilities, and the protection and advocacy services available from the system, including the name, address, and telephone number of the system and other information and training about individual rights; and

(2) *Monitoring compliance* with respect to the rights and safety of service recipients.

(h) *Unaccompanied access to residents of a facility shall include the opportunity to meet and communicate privately with such individuals* regularly, both formally and informally, by telephone, mail and in person.

45 C.F.R. § 1386.22(f)-(h) (2000) (emphasis added). Thus, under DD Act regulations, a P&A system may have unaccompanied access to residents of a facility to conduct investigations of abuse or neglect, provide information and training, and monitor compliance with rights and safety laws.

In our view, the mental illness and developmental disabilities statutes and regulations clearly allow a P&A system to have access to an individual, under the circumstances and according to the procedures set out in the statutes and regulations, irrespective of the consent of the individual's legal guardian. Nothing in the statutes or regulations requires guardian consent to access, and we do not believe that they imply any such requirement. The PAMII Act regulations expressly provide that the right of unaccompanied access by a P&A system includes access to individuals with legal guardians, *see* 42 C.F.R. § 51.42(d) (2000), and applies despite the existence of any state or local law restricting access to minors and adults with legal guardians, *see id.* § 51.42(e). And the DD Act regulations provide that the right to unaccompanied access includes the right to meet privately with disabled persons. *See* 45 C.F.R. § 1386.22(h) (2000).

Courts are also of the view that guardian consent to access is not required. In *Mississippi Protection & Advocacy System, Inc. v. Cotten*, 929 F.2d 1054 (5th Cir. 1991), the United States Court of Appeals for the Fifth Circuit considered the legality of a state mental institution's regulations limiting a P&A system's access to residents. The state's regulations severely restricted the circumstances under which the P&A system could meet with patients and included a requirement that a patient's guardian consent to access. The court upheld an injunction on the state's practices:

> The mandatory provisions of section 6042 [now section 15043] relating to authority to investigate incidents of abuse and neglect are rendered nugatory by the Center's restrictions on MP & A. Similarly, MP & A is prevented from performing its statutory duty of establishing a grievance procedure for clients or prospective clients. The regulations are such that MP & A has virtually no access to clients not retained prior to the change in the regulations. Most importantly, the Center's regulations render the state's requirement to "have in effect a system to protect and advocate the rights of persons with developmental disabilities" comatose if not moribund. The trial court did not err in finding a violation of the Act.

*Cotten*, 929 F.2d at 1059 (citations omitted); *see also Mich. Prot. & Advocacy Serv., Inc. v. Miller*, 849 F. Supp. 1202, 1207-08 (W.D. Mich. 1994).

And in *Iowa Protection & Advocacy Services, Inc. v. Gerard Treatment Programs, L.L.C.*, 152 F. Supp. 2d 1150 (N.D. Iowa 2001), the court rejected the argument that parents, guardians, or legal representatives of a patient must be present at and have the right to terminate any interview by the P&A system. The court pointed out that nothing in the PAMII Act regulations gives a guardian the right to be present at or terminate an interview. In fact, the court said, the regulations specifically provide for "unaccompanied access" and the right to "meet and communicate privately" with patients, including patients "who have legal guardians or conservators." *Iowa Prot. & Advocacy Servs.*, 152 F. Supp. 2d at 1168-71 (citing 42 C.F.R. § 51.42).

Accordingly, we conclude that a P&A system may have access to a person with a mental illness or a developmental disability residing in a care facility irrespective of guardian consent. In order for a state to receive federal funds pursuant to the PAMII and DD Acts, it must ensure that the state P&A system has access to these individuals to the extent allowed and required by federal law.

## Access to Records

Both the PAMII Act and the DD Act set out in detail a P&A system's right of access to patient records as a condition of a state's receipt of federal funds. The PAMII Act provides as follows:

**§ 10805. System requirements**

> (a) A system established in a State under section 10803 of this title to protect and advocate the rights of individuals with mental illness *shall*—
>
>     . . . .

(4) in accordance with section 10806 of this title, *have access to all records of—*

(A) any individual who is a client of the system *if such individual, or the legal guardian, conservator, or other legal representative of such individual, has authorized the system to have such access;*

(B) *any individual* (including an individual who has died or whose whereabouts are unknown)—

(i) who by reason of the mental or physical condition of such individual *is unable to authorize the system to have such access;*

(ii) who *does not have a legal guardian*, conservator, or other legal representative, or for whom the legal guardian is the State; *and*

(iii) with respect to whom a *complaint* has been received by the system or with respect to whom as a result of monitoring or other activities (either of which result from a complaint or other evidence) *there is probable cause to believe that such individual has been subject to abuse or neglect;* and

(C) any individual with a mental illness, *who has a legal guardian*, conservator, or other legal representative, with respect to whom a *complaint* has been received by the system or with respect to whom *there is probable cause to believe the health or safety of the individual is in serious and immediate jeopardy, whenever–*

(i) *such representative has been contacted* by such system upon receipt of the name and address of such representative;

(ii) *such system has offered assistance to such representative* to resolve the situation; and

(iii) *such representative has failed or refused to act* on behalf of the individual;

. . . .

42 U.S.C. § 10805 (1994) (emphasis added). Thus, with respect to a patient who has a legal guardian, a P&A system may have access to all records of the patient when (1) the legal guardian consents to access, *see id.* § 10805(a)(4)(A), or (2) a complaint has been received or there is probable

cause to believe that the patient's health or safety is in serious and immediate jeopardy, provided the guardian has been contacted, the P&A system has offered assistance to the guardian, and the guardian has failed or refused to act on behalf of the patient, *see id.* § 10805(a)(4)(C). Under Texas law, "[n]otwithstanding other state law, the protection and advocacy system established in this state under the federal Protection and Advocacy for Mentally Ill Individuals Act of 1986 (42 U.S.C. Sec. 10801-10851) is entitled to access to records relating to persons with mental illness to the extent authorized by federal law." TEX. HEALTH & SAFETY CODE ANN. § 615.002(a) (Vernon 1992).

The DD Act and corresponding regulations are substantially similar:

### (a) System required

In order for a State to receive an allotment under part B of this subchapter or this part—

(1) the state shall have in effect a system to protect and advocate the rights of individuals with developmental disabilities;

(2) such system *shall—*

. . . .

(I) have access to all records of—

(i) any individual with a developmental disability who is a client of the system *if such individual, or the legal guardian, conservator, or other legal representative of such individual, has authorized the system to have such access;*

(ii) *any individual* with a developmental disability, in a situation in which—

(I) the individual, by reason of such individual's mental or physical condition, *is unable to authorize the system to have such access;*

(II) the individual *does not have a legal guardian,* conservator, or other legal representative, or the legal guardian of the individual is the State; *and*

(III) a *complaint* has been received by the system about the individual with regard to the status or treatment of the individual or, as a result of monitoring or other activities, *there is probable cause*

*to believe that such individual has been subject to abuse or neglect*;
and

> (iii)   any individual with a developmental disability, in a situation in which—

> > (I)   the individual *has a legal guardian*, conservator, or other legal representative;

> > (II)   a *complaint* has been received by the system about the individual with regard to the status or treatment of the individual or, as a result of monitoring or other activities, there *is probable cause to believe that such individual has been subject to abuse or neglect*;

> > (III)   *such representative has been contacted* by such system, upon receipt of the name and address of such representative;

> > (IV)   *such system has offered assistance to such representative* to resolve the situation; and

> > (V)   *such representative has failed or refused to act* on behalf of the individual; . . . .

42 U.S.C. § 15043 (Supp. V 1999) (emphasis added); *see also* 42 C.F.R. § 51.41(a)-(b) (2000) (restating the Act). Thus, under the DD Act, a P&A system may access the records of a patient with a legal guardian when (1) the legal guardian consents to access, *see* 42 U.S.C. § 15043(a)(2)(I)(i) (Supp. V 1999), or (2) a complaint has been received or there is probable cause to believe that the patient has been subject to abuse or neglect, and the guardian has been contacted, the P&A system has offered assistance to the guardian, and the representative has failed or refused to act on behalf of the individual, *see id.* § 15043(a)(2)(I)(iii). Under Texas law, the state's P&A system must have access to a patient's records to the extent allowed and required by federal disability laws. *See* TEX. HUM. RES. CODE ANN. § 112.021 (Vernon 2001).

Courts have considered the question of whether a legal guardian's refusal to consent to access constitutes a failure or refusal to act, which would allow access to records by the P&A system. *See Iowa Prot. & Advocacy Servs.*, 152 F. Supp. 2d 1150; *Disability Law Ctr., Inc. v. Riel*, 130 F. Supp. 2d 294 (D. Mass. 2001). It was argued by guardians in those cases that the phrase "failed to or refused to act on behalf of the individual" is intended to address only those situations where the guardian fails to act at all, not where the guardian proactively investigates the incident and decides in good faith to deny access to the patient's records. The courts have not been persuaded by that argument:

The "plain meaning" of § 10805(a)(4) is that it grants the P & A what might be described as "overriding" authority to obtain access to patients and their records, notwithstanding a guardian's "refusal or failure to act on behalf of the individual" upon the request of the P & A for permission for such access. . . . . Looking at the statutory context of this language, . . . the purpose of access by a P & A to records and patients is precisely for the purpose of "acting on behalf of the individual" residents of facilities by investigating actual or potential abuse or neglect. . . . . Thus, the guardian's "fail[ure] or refus[al] to act on behalf of the individual," in the context of the statute, includes the guardian's failure to consent to access by the P & A.

Moreover, such a reading of the statute is in keeping with the "'object and policy'" of the PAMII Act, . . . and would best "effectuate the intent reflected in the language of the enactment and the legislative process."

*Iowa Prot. & Advocacy Servs.*, 152 F. Supp. 2d at 1165 (citations omitted); *see also Riel*, 130 F. Supp. 2d at 297-301. A federal court in Texas, while not deciding the issue, recently recognized the holding of *Iowa Protection & Advocacy Services* in determining whether Advocacy, Inc. had the right to access a deceased patient's records:

Even if there were a legal guardian applicable to the present action, the advocacy agency's statutory mandate to investigate abuse and neglect may trump any objections that the legal guardian has concerning access to the pertinent records. Recognizing the importance of having an advocacy group to protect the rights of institutionalized pat[i]ents, at least one court has held that even if the patient's guardian has told the advocacy agency or the institution that they do not want the advocacy agency to have access to the patient's records, the advocacy agency still has a right of access to the patient's records. *See Iowa Prot. & Advocacy Svcs., Inc. v. Gerard Treatment Programs L.L.C.*,152 F. Supp. 2d 1150, 1162-63 (N.D. Iowa 2001).

*Advocacy Inc. v. Tarrant County Hosp. Dist.*, 2001 WL 1297688 *3 n.5 (N.D. Tex 2001) (mem. op).

Courts have recognized that under the PAMII Act and DD Act, legal guardians retain an important role in protecting the interests of persons with mental illness or developmental disabilities. *See Tarwater*, 97 F.3d at 497-98; *Riel*, 130 F. Supp. 2d at 299-300. The PAMII Act recognizes that "family members of individuals with mental illness play a crucial role in being advocates for the rights of individuals with mental illness where the individuals are minors, the individuals are legally competent and choose to involve the family members, and the individuals are legally incompetent

and the legal guardians, conservators, or other legal representatives are members of the family." 42 U.S.C. § 10801(a)(2) (1994 & Supp. V 1999). "Legal guardian, conservator, and legal representative" are defined as someone "having authority to make all decisions on behalf of individuals with developmental disabilities." 45 C.F.R. § 1386.19 (2000). Under the regulations of both Acts, when a complaint has been received or that there is probable cause to believe the patient's health or safety is in jeopardy, a P&A system must make a good faith effort to contact a legal guardian and offer assistance to the guardian before accessing a patient's records. *See* 42 C.F.R. § 51.41(b)(3) (2000); 45 C.F.R. § 1386.22(a)(3) (2000). And under the PAMII regulations, a P&A system may not take formal action on behalf of any individual or initiate a formal relationship with the individual, except in emergency situations, without the consent of the individual's guardian. *See* 42 C.F.R. § 51.42(e) (2000).

However, courts have found that P&A systems have an "overriding" authority to access patients and their records. *See, e.g., Iowa Prot. & Advocacy Servs.*, 152 F. Supp. 2d at 1165. Guardians retain their authority to make decisions about their wards, but are not the sole decision-makers under the Acts. *See Riel*, 130 F. Supp. 2d at 299. Courts have found that the Acts' legislative history shows that Congress intended to let the obligations of the P&A systems "trump" the guardian's wishes under the circumstances outlined in the statutes and regulations. *See id.* at 300. "It is clear that the Act provides express authority for P & As to gain broad access to records, facilities, and residents to ensure that the Act's mandates can be effectively pursued." *Tarwater*, 97 F.3d at 497.

Accordingly, based on the plain language of federal statutes and regulations, on the underlying purpose of the PAMII and DD Acts and regulations, and on court interpretations of these laws, P&A systems may have access to individuals with mental illness or developmental disabilities, and their records, under the prescribed circumstances and procedures, irrespective of guardian consent.

## S U M M A R Y

Federally-funded state protection and advocacy systems for persons with mental illness or developmental disabilities are authorized, in accordance with federal law, to have access to such persons and their records under certain circumstances and in accordance with the procedures prescribed by federal law, even if the person's legal guardian objects to such access.

Yours very truly,

JOHN CORNYN
Attorney General of Texas

HOWARD G. BALDWIN, JR.
First Assistant Attorney General

NANCY FULLER
Deputy Attorney General - General Counsel

SUSAN DENMON GUSKY
Chair, Opinion Committee

Barbara Griffin
Assistant Attorney General